UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

TAMARA RAMIREZ,

10 CIV.  9041 (BSJ)

Plaintiff,

-against-

THE CITY OF NEW YORK, DETECTIVE SCHICK,
DETECTIVE PUMA, and NEW YORK CITY
EMPLOYEES JOHN DOE S # 1-5 (names and number of
whom are unknown at present), and other unidentified
members of the New York City Police Department,

COMPLAINT

JURY TRIAL DEMANDED

Defendants.

------------------------------------------------------------------------ x

## PRELIMINARY STATEMENT

1.     This is a civil rights action to recover money damages arising out of defendants' violation of plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. Section 1983, and of rights secured by the First, Fifth, Fourth and Fourteenth Amendments to the United States Constitution, and the laws of the State of New York.  Plaintiff was falsely arrested and imprisoned, by police officers employed by the New York City Police Department and City Employees believed to be employed at the New York City Department of Correction.  Plaintiff was deprived of her constitutional and common law rights when the individual defendants unlawfully confined plaintiff, caused the unjustifiable arrest, and deliberately deprived plaintiff of proper medical care while she was in the government's custody.

## JURISDICTION

2.       This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this court by 28 U.S.C. §§ 1331, 1342 (3) and (4) and the aforementioned statutory and constitutional provisions.

3.       The plaintiff Tamara Ramirez further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gave rise to the federally based claims and causes of action.

## VENUE

4.       Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391, (a), (b) and (c) and § 1402 (b) because the claims arose in this district.

## PARTIES

5.       Plaintiff Tamara Ramirez is a citizen of the United States and a resident of the County of New York, State of New York.

6.       New York City Police Detective Schick, is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

7.       On the date of incident, February 10, 2010, Detective Schick was assigned to the Midtown South Precinct.

8.       Detective Schick is being sued herein in his individual and official capacity.

9.     New York City Police Detective Puma is and was at all times relevant herein an officer, employee, and agent of the New York City Police Department.

10.    On the date of incident, February 10, 2010, Detective Puma was assigned to the Midtown South Precinct.

11.    Detective Puma is being sued in his individual and official capacity.

12.    New York City Employees John Does # 1-5 are and were at all times relevant herein officers, employees, and agents of the City of New York and the New York City Police Department, or the New York City Department of Correction.

13.    New York City Employees John Does # 1-5 are being sued in their individual capacity and official capacity.

14.    At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.  They were acting for and on behalf of the City of New York, the New York City Police Department, and/ or the New York City Department of Correction at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the New York City Police Department and/ or the New York City Department of Correction and incidental to the lawful pursuit of their duties as officers, employees and agents of the New York City Police Department and/or the New York City Department of Correction.

15.    Defendant City of New York is a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department and department of corrections which act as its agent in the areas of law enforcement and prisoner

- 3 -

custody and for which it is ultimately responsible.  The defendant City of New York assumes the risks incidental to the maintenance of a police force and corrections force and the employment of police and corrections officers as said risks attach to the public consumers of the services provided by the New York City Police Department and the New York City Department of Correction.

## STATEMENT OF FACTS

16.     Plaintiff Tamara Ramirez and her husband began having marital problems in the year 2000.

17.     Plaintiff and her husband attempted to salvage their marriage until the year 2004 when plaintiff's husband moved out of their home.

18.     In the year 2004, plaintiff was also the victim of an extremely brutal crime, which caused her to suffer from severe physical, psychological and emotional injuries.

19.     Plaintiff has battled to recover from the physical, psychological, and emotional injuries caused by her failed marriage and the brutal crime of which she was a victim.

20.     Prior to plaintiff's arrest on February 10, 2010 by defendant Detectives Puma and Schick, plaintiff's physical, psychological and emotional condition was improving.

21.     The negligent, vindictive, and unconstitutional actions by defendants against plaintiff Tamara Ramirez on or about February 10, 2010 caused plaintiff such severe psychological and emotional trauma that plaintiff's psychological, physical and emotional state deteriorated.

22.     The negligent, vindictive, and unconstitutional actions by defendants against plaintiff Tamara Ramirez on or about February 10, 2010, described herein, directly and negatively altered the way plaintiff is able to live her life on a daily basis.

23.     In January 2009 plaintiff obtained a Temporary Order of Protection from New York County Family Court against her husband after he pushed her and threatened her.

24.     Thereafter, in November 2009 plaintiff decided to initiate divorce proceedings in New York Supreme Court against her husband.

25.     In November, 2009 plaintiff's husband called the police as plaintiff was trying to serve him with the divorce papers and filed a false complaint with the New York City Police Department alleging that plaintiff assaulted him while she was attempting to serve him with the divorce papers.

26.     Plaintiff did not successfully serve her husband with the divorce papers in November 2009.

27.     Plaintiff was arrested in November 2009 based upon the false complaint made by her husband.

28.     Jonah Wexler and the Cardozo Law School Criminal Defense Clinic represented plaintiff in matters related to plaintiff's arrest in November 2009.

29.     As a result of the allegations made by plaintiff's husband against plaintiff, in November, 2009 a Temporary Restraining Order was issued by the Court that barred plaintiff from having any contact with her husband.

30.     As a result, plaintiff could no longer personally serve her husband with the divorce papers.

31.     Plaintiff's counsel from the Cardozo Law Clinic advised plaintiff that they would arrange for her husband to be served with the divorce papers so as not to violate the existing Temporary Order of Protection.

32.     Thereafter, Cardozo Criminal Defense Clinic hired an independent process server to serve the divorce papers on plaintiff's husband.

33.     The process server hired by the clinic served plaintiff's husband with the court papers in late November, 2009.

34.     Plaintiff's husband filed a complaint with the New York City Police Department in late November 2009 alleging that plaintiff violated the Order of Protection when a process server came to his home and served him with divorce papers.

35.     In late November 2009 defendants Detectives Puma and Schick received the complaint filed by plaintiff's husband wherein he alleged that plaintiff violated the Order of Protection when a process server served him with legal divorce papers.

36.     Defendants Detectives Puma and Schick took essentially no action with respect to the complaint filed by plaintiff's husband in November 2009 for approximately two months.

37.     Defendants Detectives Puma and Schick failed to inquire about whether, as a matter of law, the Temporary Order of Protection was violated when an independent process server, served plaintiff with legal divorce papers that had been filed with the Court.

38.     On or about February 10, 2010, Detectives Puma and Schick decided that it was suddenly urgent to arrest plaintiff for violating the Temporary Order of Protection based upon the complaint made to the New York City Police Department by plaintiff's husband two months earlier.

39.     Defendants Detectives Puma and Schick were aware that a large blizzard was forecasted to hit New York City on February 10, 2010.

40.     Defendants Detectives Puma and Schick were aware that a large snowstorm could result in understaffing in the Courts and might increase the amount of time arrestees were detained.

41.     At approximately 12:05 a.m. on February 10, 2010, defendants Detectives Puma and Schick proceeded to plaintiff's apartment located in the County and State of New York.

42.     Upon arriving at plaintiff's apartment building, defendants Detectives Puma and Schick proceeded to plaintiff's apartment and knocked on the front door.

43.     On February 10, 2009 at approximately 12:05 a.m., plaintiff Tamara Ramirez was lawfully present inside of her apartment located in the County and State of New York.

44.     Plaintiff Tamara Ramirez was startled to hear a knock on the door at such a late hour of the night.

45.     After the front door to plaintiff's apartment was opened, defendants Detectives Schick and Puma advised plaintiff that they were arresting her for violating the temporary order of protection.

46.     The officers explained that they were arresting plaintiff based upon a complaint made by her husband that a process server served him with legal Court documents two months earlier.

47.     Defendant Detectives Puma and Schick's decision to arrest plaintiff at her home in the middle of the night, the night a major snowstorm was forecasted to paralyze New York City was negligent, malicious, callous, reckless and violated plaintiff's rights under the Constitution of the United States of America. Defendant Detectives Puma and Schick's actions

caused plaintiff to sustain physical pain and suffering, as well as severe psychological and emotional trauma.

48.     Upon hearing that defendant Detectives Puma and Schick intended to arrest her, plaintiff frantically called Jonah Wexler, her criminal attorney who arranged for the process server to serve plaintiff's husband with the divorce papers.

49.     Jonah Wexler asked to speak with the officer in charge of plaintiff's arrest and he was put on the telephone with defendant Detective Schick.

50.     Jonah Wexler spoke with defendant Detective Schick over the telephone and advised the detective that on behalf of the Cardozo Law School Criminal Defense Clinic, he represented plaintiff in the underlying assault case from which the Order of Protection at issue emanated.

51.     Jonah Wexler also explained that the Cardozo Law School Criminal Defense Clinic hired a process server with no relation to plaintiff or to plaintiff's husband to serve plaintiff's husband with legal divorce papers.

52.     Mr. Wexler advised defendant Detective Schick that the independent process server was specifically hired to serve the divorce papers to avoid violating the Order of Protection, as plaintiff was barred from serving the papers herself.

53.     Further, Mr. Wexler explained to defendant Detective Schick that plaintiff herself did not personally instruct the process server to serve her husband with the divorce papers. Rather, the Cardozo Law School Defense Clinic retained and paid for the process server to serve plaintiff's husband with the Court divorce papers. All instructions to the process server were given by employees at Cardozo Law School Defense Clinic.

54.     Mr. Wexler advised defendant Detective Schick that based upon the information in the defendant Detectives' possession, there was not probable cause to arrest plaintiff for violating the Order of Protection.

55.     Further, Mr. Wexler advised and placed defendant Detective Schick on notice that plaintiff suffered from severe psychological issues, was taking medication for those issues, and arresting her in her home, after midnight, during a blizzard, would likely cause plaintiff extreme pain and suffering, as well as severe psychological and emotional trauma

56.     It was suggested to defendant Detective Schick that it might be wise to forego arresting plaintiff on that night so that the defendant Detectives could inquire about whether they had legal justification to arrest plaintiff based upon the facts known to the officers at the time of plaintiff's arrest on February 10, 2010.

57.     Despite Mr. Wexler's entreaties to defendant Detective Schick, the defendant Detectives arrested plaintiff.

58.     Defendant Detectives Puma and Schick refused to allow plaintiff to take her prescription medication with her when she was arrested.

59.     Instead Defendants Detectives Puma and Schick pressured, encouraged, and intimidated plaintiff to take extra doses of her medication before she was taken from her home.

60.     Defendant Detectives Puma and Schick told plaintiff that she should ingest extra medication before leaving her apartment because the ensuing blizzard would likely lengthen the time of plaintiff's detention.

61.     Plaintiff complied with the orders of the defendants to ingest additional medication, which caused plaintiff to be severely overmedicated.

62.     Defendants Detectives Puma and Schick handcuffed plaintiff and drove her to the New York City Police Department Midtown South Precinct.

63.     Plaintiff spent several hours at the Midtown South Precinct alone in a room.

64.     After several hours, plaintiff was transported to Central Booking by defendant Detectives Puma and Schick.

65.     Although, plaintiff necessitated medical treatment, Defendant Detectives Puma and Schick also coerced plaintiff agree not to request medical attention at Central Booking.

66.     Plaintiff was placed in an overcrowded cell with women accused of committing a variety of crimes.

67.     At approximately 10:30 a.m. on February 10, 2010, the New York County District Attorney's Office declined to prosecute plaintiff for violating the Order of Protection.

68.     Although Defendants City of New York and New York City Employees John Doe #1-5, believed to be employed at the New York City Department of Corrections, were notified that the New York County District Attorney's Office declined to prosecute plaintiff, they refused to release plaintiff because the decline to prosecute form was allegedly on the wrong letterhead.

69.     The unconstitutionally prolonged detention of plaintiff by Defendants City of New York and New York City Employees John Doe #1-5, violated plaintiff's rights under the Constitution of the United States of America and New York State Law and caused plaintiff to endure additional extreme pain and suffering, as well as severe psychological and emotional trauma.

- 10 -

70.     After Defendants City of New York and New York City Employees John Doe #1-5 finally located the proper letterhead, required for plaintiff's release from government custody, they advised counsel for plaintiff that plaintiff would not be released because there was an outstanding warrant for her arrest for failing to appear for a desk appearance ticket.

71.     Counsel for plaintiff was advised by Defendants City of New York and New York City Employees John Doe #1-5 that plaintiff would likely be held for an additional twenty-four hours in order to determine whether there was, in fact an active warrant for plaintiff's arrest.

72.     Hours later, Defendants City of New York and New York City Employees John Doe #1-5 admitted that the alleged outstanding warrant for the Desk Appearance Ticket did not really exist.

73.     Plaintiff was released from government custody in the late afternoon of February 10, 2010.

74.     Plaintiff spent approximately eighteen hours in custody before she was released from government custody.

75.     The false arrest and extended unlawful detention of plaintiff by defendants caused plaintiff to sustain physical pain and suffering, as well as psychological and emotional trauma.

76.     A notice of claim was served on the Comptroller of the City of New York and at least thirty days have elapsed since the service of such notice and adjustment and/or payment has been neglected and/or refused.

# FIRST CAUSE OF ACTION

## Violation of Plaintiff's Fourth Amendment and

## Fourteenth Amendment Rights

77.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 76 with the same force and effect as if more fully set forth at length herein.

78.     Defendants Detective Schick and Detective Puma, who were acting in concert and within the scope of their authority, denied plaintiff timely medical treatment, and arrested and caused plaintiff to be imprisoned and criminally prosecuted without probable cause in violation of plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment of the Constitution of the United States and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

79.     Defendants New York City Employees John Does # 1-5 , who were acting in concert and within the scope of their authority, caused the length of plaintiff's unlawful imprisonment to be extended several hours without probable cause in violation of plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment of the Constitution of the United State and to be free of a deprivation of liberty under the Fourteenth Amendment to the Constitution of the United States.

## SECOND CAUSE OF ACTION

### False Arrest

80.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 79 with the same force and effect as if more fully set forth at length herein.

81.    The acts and conduct of the defendants constitute false arrest and false imprisonment under the laws of the State of New York and under the Fourth Amendment to the United States Constitution.   Defendants intended to confine plaintiff and, in fact, confined plaintiff, and plaintiff was conscious of the confinement.   In addition, plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

82.    Defendants Detective Schick, Detective Puma, and New York City Employees John Does # 1-5 were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department, which are therefore responsible for their conduct.

83.    The City, as the employer of thedefendant police detectives and City employee defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

84.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## THIRD CAUSE OF ACTION

### Negligent Hiring, Retention, Training and Supervision

85.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 84 with the same force and effect as if more fully set forth at length herein.

86.     The City of New York and its employees, servants and/or agents acting within the scope of their employment did negligently hire, retain, train and supervise defendants Detective Schick, Detective Puma, and New York City Employees John Does # 1-5, individuals who were unfit for the performance of police duties on February 10, 2010, at the aforementioned location.

87.     Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## FOURTH CAUSE OF ACTION

### Failure to Intervene

88.     The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 87 with the same force and effect as if more fully set forth at length herein.

89.     Defendants had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in the presence of other officers.

90.     Defendants failed to intervene to prevent the unlawful conduct described herein.

- 14 -

91.   As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, she was put in fear of his safety, and she was humiliated and subject to physical constraints, and she was deprived of medical attention.

92.   Defendants Detective Schick, Detective Puma, and New York City Employees John Does # 1-5, were at all times agents, servants, and employees acting within the scope of their employment by the City of New York and the New York City Police Department or the New York City Department of Corrections, which are therefore responsible for their conduct.

93.   The City, as the employer of the police detective and city employee defendants, is responsible for their wrongdoing under the doctrine of respondeat superior

94.   Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## FIFTH CAUSE OF ACTION

## Negligence

95.   The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 94 with the same force and effect as if more fully set forth at length herein.

96.   Defendants owed a duty of care to plaintiff.

97.   Defendants breached that duty of care by arresting plaintiff without probable cause, failing to provide prompt and appropriate medical care, and extending the length of plaintiff's detention because of sloppy, careless, and reckless mistakes made by defendants in paperwork.

98.     As a direct and proximate cause of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

99.     All of the foregoing occurred without any fault or provocation by plaintiff.

100.    The City, as the employer of the police officer defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

101.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## SIXTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

102.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 101 with the same force and effect as if more fully set forth at length herein.

103.    By the actions described herein, defendants Detective Schick, Detective Puma, and New York City Employees John Does # 1-5, each acting individually and in concert with each other, engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which negligently caused severe emotional distress to plaintiff, Tamara Ramirez. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated plaintiff's statutory and common law rights as guaranteed plaintiff by the laws and Constitution of the State of New York.

104.    As a result of the foregoing, plaintiff was deprived of liberty and sustained great emotional injuries.

105.    The City, as the employer of the police detective and City employee defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

- 16 -

106.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## SEVENTH CAUSE OF ACTION

## Deliberate Indifference to Medical Needs

107.    The plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs marked 1 through 106 with the same force and effect as if more fully set forth at length herein.

108.    Defendants Detectives Puma and Schlock, despite being aware that plaintiff needed medical attention, coerced and ordered plaintiff to decline medical attention when it was offered to her at Central Booking.

109.    Defendants Detective Schick, Detective Puma, and New York City Employees John Does # 1-5,were at all times agents, servants, and employees acting within the scope of their employment by the City of New York, the New York City Police Department, and the New York City Department of Corrections which are therefore responsible for their conduct.

110.    The City, as the employer of the police detective and City employee defendants, is responsible for their wrongdoing under the doctrine of respondeat superior

111.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims and pursuant to the Fourth Amendment of the United States Constitution this Court has jurisdiction to hear the federally based claim.

## JURY DEMAND

112.    Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief as follows:

- 17 -

That the jury find and the Court adjudge and decree that plaintiff Tamara Ramirez shall recover compensatory damages in the sum of $2,000,000 against the individual defendants and the City of New York, jointly and severally, together with interest and costs; and punitive damages in the sum of $1,000,000 against the individual defendants, jointly and severally.

a.    That the plaintiff recover the cost of the suit herein, including reasonable attorneys fees pursuant to 42 U.S.C. § 1988.

b.    That the plaintiff have such other and further relief as the Court shall deem just and proper.

Dated:    New York, New York
          December 2, 2010

By:    _____
       DAVID M. HAZAN, ESQ.
       STUART E. JACOBS, ESQ.
       JACOBS & HAZAN, LLP
       Attorney for Plaintiff
       22 Cortlandt Street, 16th Floor
       New York, NY 10007
       (212) 419-0363

- 18 -